UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

BONNIE MARSH-GODREAU,

        Plaintiff,

 -against-           8:15-CV-437 (LEK/CFH)

STATE UNIVERSITY OF NEW YORK
COLLEGE AT POTSDAM, *et al.*,

        Defendants.

## MEMORANDUM-DECISION AND ORDER

**I. INTRODUCTION**

On April 13, 2015, plaintiff Bonnie Marsh-Godreau commenced this action against defendant State University of New York College at Potsdam ("SUNY"), alleging that SUNY and defendant Karen Ham discriminated against her on the basis of her disability. Dkt. No. 1 ("Complaint"). Plaintiff's second amended complaint asserts discrimination and retaliation claims against SUNY under the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.*, and against defendant Karen Ham under the New York Human Rights Law ("HRL"), N.Y. Exec. Law §§ 290 *et seq.*, and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601. Dkt. No. 23 ("Second Amended Complaint"). Defendants moved for summary judgment on each of Plaintiff's claims. Dkt. Nos. 49 ("Motion"), 49-1 ("Memorandum"). For the reasons that follow, Defendants' Motion is granted.

**II. BACKGROUND**

 **A. Factual History**

Plaintiff has worked at SUNY's Career Planning Department since 1980 and, during the relevant time period, she held the "Keyboard Specialist II" position. Dkt. No. 56-1

("Statement of Material Facts") ¶¶ 11–12. This position has numerous responsibilities, including performing secretarial services, data entry, compiling data for SUNY's "Annual Report," writing emails and drafting flyers for students and faculty regarding "upcoming events," assisting in hiring and performing reference checks for student employees, maintaining "all office systems," "[m]aintain[ing] and updat[ing] a lending library system for career and how to books," and providing feedback on office systems and procedures. Dkt. No. 56-2 at 3–8 ("2011 Evaluation") at 5.[1]

Plaintiff was diagnosed with depression in 2001, fibromyalgia in 2009, and bipolar II disorder in January 2011. Dkt. No. 56-5 ("Marsh-Godreau Declaration") ¶¶ 4–6. On June 14, 2011, Plaintiff went on sick leave as a result of her disability. Id. ¶ 7. As mentioned above, Plaintiff was typically responsible for compiling data for SUNY's Annual Report. Plaintiff had already entered some data for that year's Report before going on leave. SMF ¶ 19. After she went on leave, another employee, Margaret Bain, agreed to finish the report. Id. ¶ 18. Bain entered the data and completed the Annual Report using new software, which increased the efficiency of data entry and compiled the data in a "user-friendly format." Id. ¶ 22.

Plaintiff returned to work at SUNY on December 22, 2011. Marsh-Godreau Decl. ¶ 15. After returning to work, Ham, then Plaintiff's supervisor, asked whether Plaintiff's doctor "changed her medicine" and stated that "she thought that [Plaintiff] should have taken medical leave much sooner." Id. ¶ 16. On January 11, 2012, Plaintiff received a performance evaluation from Ham that rated her job performance as "satisfactory." 2011 Evaluation at 4. In the

---

[1] The cited page numbers for this document refer to those generated by the Court's electronic filing system ("ECF").

evaluation, Ham wrote that Plaintiff's "attendance this year had a negative effect on[] office productivity," and, "[b]ecause [Plaintiff] was on medical leave[,] other staff completed major parts of her performance program." Id. at 8. Shortly after receiving her evaluation, Plaintiff complained to Ham that she "felt [she] was being treated unfairly because of all the disability comments included in" the evaluation. Marsh-Godreau Decl. ¶ 22. Ham responded by stating that she did not think Plaintiff was "with it" before going on medical leave and that Plaintiff "should have gone out on medical leave sooner." Id. ¶ 23.

Shortly after Plaintiff returned to SUNY in December 2011, Ham initiated weekly meetings with Plaintiff, where they would review Plaintiff's tasks for that week. Dkt. No. 56-3 ("Ham Transcript") at 185–86. When Plaintiff had difficulty completing a task, she and Ham "would . . . talk about how [they] could work together to" complete those tasks. Id. These weekly meetings continued until Ham retired in 2015. Id. at 188.

On March 1, 2012, Plaintiff discovered a memo titled "Physical and Behavioral Observation of Bonnie Marsh-Godreau" in her personnel file. Marsh-Godreau Decl. ¶¶ 24–26; Dkt. No. 56-2 at 62 ("Plaintiff's Exhibit C").[2] The memo was written by SUNY's Career Planning Department on July 20, 2011, and stated that Plaintiff had, "in recent months," exhibited "physical signs" like "vacant star[ing] and crying," that she had difficulty "complet[ing] routine tasks that she has done for years," and that the Career Planning staff "hope that [Plaintiff] can get the medical help she needs . . . so that she can return to the office as a productive staff member." Id. On March 6, 2012, Plaintiff complained to Mary Dolan, a SUNY Human Resources Department employee, SAC ¶ 29, stating that she "believe[d she] ha[d] been

---

[2] The cited page numbers for this document refer to those generated by ECF.

subject to discrimination on the basis of [her] actual/perceived disability," Marsh-Godreau Decl. ¶ 27.

Plaintiff states that, on July 1, 2012, her "duties and responsibilities in data entry reporting . . . were significantly diminished," and that her "duties and responsibilities in supervising student workers were completely removed." Id. ¶¶ 28–29. In her deposition, she states that she still performs data entry reporting, still compiles data for the Annual Report, and "still do[es] all the things . . . that [she] did before." Dkt. No. 49-3 ("Marsh-Godreau Transcript") at 96–97. Plaintiff has received annual salary increases since returning from medical leave in December 2011. SMF ¶ 32.

**B. Procedural History**

On April 13, 2015, Plaintiff filed her original Complaint. Compl. She filed an amended complaint on June 23, 2015. Dkt. No. 10 ("Amended Complaint"). Defendants filed a motion for judgment on the pleadings on July 29, 2015, alleging that many of Plaintiff's causes of action were time-barred. Dkt. No 15-1. Plaintiff then filed a motion for leave to file her Second Amended Complaint. Dkt. No. 19-2. In a March 11, 2016 Order, this Court gave Plaintiff leave to amend her complaint, denied the motion for judgment on the pleadings as moot, and deemed the Second Amended Complaint the operative pleading. Dkt. No. 21.

Plaintiff's Second Amended Complaint alleges discrimination and retaliation claims against SUNY under § 504 of the Rehabilitation Act, and against defendant Karen Ham under the HRL and FMLA. SAC ¶¶ 71–135. Defendants moved for summary judgment on each cause of action, Mot.; Mem., and Plaintiff opposed the Motion, Dkt. No. 56 ("Opposition"). Defendants did not file a reply brief. Docket.

## III. LEGAL STANDARD

A court must grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id.

The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co, Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A court at the summary judgment stage "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); see United States ex rel. O'Donnell v. Countrywide Home Loans, Inc., 822 F.3d 650, 653 n.3 (2d Cir. 2016).

Finally, a "court must be cautious about granting summary judgment to an employer" in discrimination cases because it is often the case that the employer's "intent is at issue." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994); accord Bader v. Special Metals Corp., 985 F. Supp. 2d 291, 305 (N.D.N.Y. 2013) (Kahn, J.). Nevertheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 608 (2d Cir.

2006) (quoting McLee v. Chrysler Corp., 109 F.3d 130, 135 (2d Cir. 1997)). See Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

## IV. DISCUSSION

### A. Claims against SUNY

#### 1. Rehabilitation Act Discrimination

The Rehabilitation Act prohibits certain employers from discriminating against employees on the basis of their disability. § 794(a). "Although its terms are broadly drawn, the Rehabilitation Act incorporates the standards of the Americans with Disabilities Act [("ADA")]." Kelly v. New York State Office of Mental Health, 200 F. Supp. 3d 378, 390 (E.D.N.Y. 2016) (alteration in original) (quoting Cheung v. Donahoe, No. 11-CV-122, 2016 WL 3640683, at *5 (E.D.N.Y. June 29, 2016); see also Rodriguez v. City of New York, 197 F.3d 611, 618 (2d Cir. 1999) ("Because Section 504 of the Rehabilitation Act and the ADA impose identical requirements, we consider these claims in tandem.").

"Claims alleging discrimination under the ADA [and the Rehabilitation Act] are subject to the burden-shifting analysis established" by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Davis v. New York City Dep't of Educ., 804 F.3d 231, 235 (2d Cir. 2015). Under this framework, the plaintiff must first present a prima facie case that "produces minimal evidentiary support for the claim of discriminatory motivation." Id. If the plaintiff establishes a prima facie case, the burden shifts to the defendant "to articulate a non-discriminatory reason for the adverse employment action." Id. Then, the plaintiff must present some evidence indicating that the defendant's purported reason is mere pretext for

6

discrimination. Id. To establish a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must present evidence showing that:

> (1) the employer is subject to the [Rehabilitation Act]; (2) the plaintiff is disabled within the meaning of the [Rehabilitation Act] or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of her job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability.

Id. (citing Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 134 (2d Cir. 2008)).

Plaintiff alleges that SUNY carried out adverse employment actions by (1) requiring her to attend weekly meetings with Ham after returning from medical leave; (2) removing her data entry and student employee supervision responsibilities; and (3) placing a memo detailing Plaintiff's behavior in her personnel file. Opp'n at 5. Plaintiff cites as evidence of discriminatory animus comments made in the 2011 Evaluation, certain statements made by Ham to Plaintiff, the fact that only Plaintiff was required to attend weekly meetings with Ham, and the fact that the memo in her personnel file commented on her disability. Id. at 6; Marsh-Godreau Decl. ¶¶ 18–23. Defendants argue that Plaintiff fails to present evidence establishing that SUNY carried out an adverse employment action or that any employment action was motivated by discrimination against Plaintiff's disability. Mem. at 6–7, 10.

Without assessing the other elements of Plaintiff's prima facie case, the Court finds that Plaintiff's discrimination claim fails because she does not present evidence showing that she suffered an adverse employment action. "A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (citing Richardson v.

7

New York State Dep't of Corr. Serv., 180 F.3d 426, 446 (2d Cir. 1999)). A materially adverse change is "more disruptive than a mere inconvenience or an alteration of job responsibilities." Littlejohn v. City of New York, 795 F.3d 297, 312 n.10 (2d Cir. 2015) (quoting Galabya, 202 F.3d at 640). "Examples of materially significant disadvantages include termination, demotion, 'a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities.'" Id. (alteration in original) (quoting Galabya, 202 F.3d at 640).

### a. Behavior Memo

On July 20, 2011, SUNY's Career Planning Department prepared a memo describing observations of Plaintiff's behavior before she went on sick leave. Pl.'s Ex. C. It stated that Plaintiff had, "in recent months," exhibited "physical signs" like "vacant star[ing] and crying," and that she had difficulty "complet[ing] routine tasks that she has done for years." Id. The memo was placed in Plaintiff's personnel file. Marsh-Godreau Decl. ¶ 24.

Plaintiff does not explain why the existence of this memo or its placement in her personnel file is an adverse employment action. The memo did not result in her termination; Plaintiff still works at SUNY. SMF ¶ 29. Also, Plaintiff has received annual pay raises since returning from medical leave, id. ¶ 32, and so could not argue that the memo resulted in a loss of wages. Although the memo may be a negative assessment of Plaintiff's performance at SUNY, negative performance evaluations are not adverse employment actions absent evidence that the evaluation had some "deleterious effect on conditions of . . . employment." Worrell v. New York City Dep't of Educ., 140 F. Supp. 3d 231, 239 (E.D.N.Y. 2015); see also Siddiqi v. New York City Health & Hosps. Corp., 572 F. Supp. 2d 353, 367 (S.D.N.Y. 2008) (holding that "negative evaluations, standing alone without any accompanying adverse results, are not cognizable" as

8

adverse employment actions (quoting Bennett v. Watson Wyatt & Co., 136 F. Supp. 2d 236, 247 (S.D.N.Y. 2001))). Therefore, the existence of the memo in Plaintiff's personnel file is not an adverse employment action.

### b. Supervisor Meetings

After Plaintiff returned from medical leave, Ham initiated meetings with Plaintiff, where they would review Plaintiff's weekly tasks and "talk about how [they] could work together to" help Plaintiff complete those tasks." Ham Tr. at 185–86. Plaintiff's assertion that her attendance of these meetings was an adverse employment action, Opp'n at 5, is unsubstantiated. She does not allege that the meetings impacted her work experience in any way. Even if Plaintiff considers the extra supervision provided in these meetings to be unwarranted or excessive, "reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions." Bennett, 136 F. Supp. 2d at 248; see Meder v. City of New York, No. 05-CV-919, 2007 WL 1231626, at *4 (E.D.N.Y. 2007) (holding that "subject[ing plaintiff] to more monitoring than . . . other teachers . . . is not sufficiently material a change to her conditions of employment" to constitute an adverse employment action); Valenti v. Massapequa Union Free Sch. Dist., Nos. 03-CV-1193, 04-CV-5271, 2006 WL 2570871, at *11 (E.D.N.Y. Sept. 5, 2006) (internal quotation marks omitted) ("Although close monitoring may cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alterations of employment conditions."). Therefore, Plaintiff's attendance at weekly meetings with Ham was not an adverse employment action.

### c. Removal of Data Entry Responsibilities

Plaintiff alleges that compiling data for SUNY's Annual Report "has always been an essential function of her position as a Keyboard Specialist II," but that SUNY no longer let Plaintiff perform this task after she returned from medical leave. SAC ¶ 55. However, in her deposition, Plaintiff conceded that she "still entered the information" for the Annual Report when she returned from medical leave, that "data report entry is still a function of [her] job," and that she "still do[es] all the things . . . that [she] did before." Marsh-Godreau Tr. at 96–97. No evidence in the record supports the conclusion that any of Plaintiff's data entry duties were diminished or removed.

Plaintiff's Declaration asserts that "[o]n July 1, 2012, [her] duties and responsibilities in data entry reporting . . . were significantly diminished." Marsh-Godreau Decl. ¶ 28. First, this conclusory testimony is insufficient to create a genuine issue of material fact. See Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (observing that a party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation"); Nadel v. Shinseki, 57 F. Supp. 3d 288, 293 n.6 (S.D.N.Y. 2014) (refusing to "credit the legal conclusions or conclusory allegations contained in . . . [p]laintiff's declaration").

Second, "a plaintiff cannot submit a declaration to defeat summary judgment that contradicts the declarant's prior deposition testimony" unless the "later sworn assertion addresses an issue that . . . was not thoroughly or clearly[] explored in the deposition." In re Fosamax Prods. Liab. Litig., 647 F. Supp. 2d 265, 281 (S.D.N.Y. 2009). Plaintiff explicitly relies on the declaration testimony quoted above to create a factual dispute regarding whether she continues to compile data for the Annual Report. Dkt. No. 56-1 ("Response Statement of Material Facts") ¶ 29. Moreover, during Plaintiff's deposition, after she revealed that she still

performed data entry for the Report, SUNY's counsel asked her to clarify her response twice before moving to a different subject. Marsh-Godreau Tr. at 96–97. Therefore, Plaintiff's declaration testimony does not raise a factual question because it directly contradicts her earlier deposition testimony, which was sufficiently explored.

Finally, even if the Court were to accept that Plaintiff's data entry responsibilities were diminished or removed, "[c]hanges in assignments or responsibilities that do not 'radical[ly] change' the nature of work are not typically adverse employment actions." Potash v. Florida Union Free Sch. Dist., 972 F. Supp. 2d 557, 584 (S.D.N.Y. 2013) (second alteration in original) (citing Galabya, 202 F.3d at 640). Plaintiff has a litany of job responsibilities other than data entry. E.g., SMF ¶ 13 (listing thirteen tasks for which Plaintiff is responsible); Marsh-Godreau Decl. ¶ 2 (listing eight tasks for which Plaintiff is responsible). It is not apparent from the record that removal of data entry duties would significantly impact Plaintiff's work responsibilities. Plaintiff's assertion that her data entry duties "have always been an essential function of [her] position as a Keyboard Specialist II," Marsh-Godreau Decl. ¶ 29, is unsupported by any evidence and does not provide the "objective indicia of material disadvantage" required to establish the adverse employment prong of a prima facie discrimination case. Potash, 972 F. Supp. 2d at 584.

In sum, the available evidence does not permit the conclusion that Plaintiff's data entry duties were diminished or removed or that removal of data entry duties would constitute an adverse employment action.

### d. Removal of Student Employee Supervision Duties

Plaintiff alleges that, before she went on medical leave, she was in charge of "supervising

student workers" and that this duty was removed after July 1, 2012. Marsh-Godreau Decl. ¶ 29. Plaintiff does not allege that this significantly altered her responsibilities as a Keyboard Specialist II, or explain what her "duties and responsibilities" were with respect to student worker supervision. This undeveloped assertion cannot be treated as an adverse employment action. Therefore, Plaintiff fails to establish the adverse employment prong of her prima facie case, and the Court grants Defendants' Motion for summary judgment with respect to the Rehabilitation Act discrimination claim against SUNY.

### 2. *Rehabilitation Act Retaliation*

"Retaliation against individuals asserting rights under the Rehabilitation Act is prohibited." Lupe v. Shinseki, No. 10-CV-198, 2012 WL 3685954, at *19 (N.D.N.Y. Aug. 24, 2012). Retaliation claims under the Rehabilitation Act are analyzed using the burden-shifting framework established in McDonnell Douglas. Id. To establish a prima facie case of retaliation, a plaintiff must "show (1) that she engaged in protected activity, (2) that the defendant was aware of this activity, (3) that the defendant took adverse action against the plaintiff, and (4) that there is a causal connection between the protected activity and the adverse action." Id.; accord Monsour v. New York State Office for People with Developmental Disabilities, No. 13-CV-336, 2017 WL 3972044, at *10 (N.D.N.Y. July 7, 2017). The defendant must then present a legitimate, non-retaliatory justification for the adverse action, and the plaintiff must provide evidence indicating that the provided justification is a pretext for retaliation. Lupe, 2012 WL 3685954, at *19.

Plaintiff alleges that she engaged in protected activity when she told Ham that she felt that the 2011 Evaluation targeted her disability, and again on March 6, 2012, when she

discovered the behavior memo in her personnel file and told SUNY's Human Resources Department that the memo constituted discrimination against her on the basis of her disability. Marsh-Godreau Decl. ¶¶ 22–27; Opp'n at 10. Plaintiff alleges that Defendants retaliated against her for these complaints on July 1, 2012, when they allegedly removed her data entry and student supervision duties. Opp'n at 10. Defendants do not dispute that Plaintiff carried out protected activity or that SUNY knew of her protected activity. Mem. at 11. Rather, they argue that Plaintiff has not established causation or an adverse employment action. Id. at 11–12.

The Court need not analyze the other elements of Plaintiff's prima facie case of retaliation because she does not establish the presence of an adverse employment action. The Supreme Court held in Burlington Northern and Santa Fe Railway Co. v. White that an adverse employment action in the retaliation context is an action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." 548 U.S. 53, 57 (2006). The action must be one "that would have been materially adverse to a reasonable employee." Id. This standard does not protect individuals from "normally petty slights, minor annoyances, and simple lack of good manners," but only "from retaliation that produces an injury or harm." Id. To be "materially adverse, a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" Kelly, 200 F.Supp. at 396 (quoting Vale v. Great Neck Water Pollution Control Dist., 80 F. Supp. 3d 426, 434 (E.D.N.Y. 2015)).

As explained above, Plaintiff has produced insufficient evidence to permit the conclusion that her data entry duties were diminished or removed. Moreover, she provides no evidence to suggest that removal of either data entry duties or student work supervision "produce[d] an injury or harm." Burlington N., 548 U.S. at 57. Plaintiff's minimal assertions regarding her loss

13

of duties are insufficient to establish the adverse employment action prong of her prima facie case. See Byrne v. Telesector Res. Grp., Inc., 339 F. App'x 13, 17 (2d Cir. 2009) (affirming dismissal of retaliation claim where plaintiff did not provide evidence establishing that alteration of her work responsibilities "harmed [her] career advancement"); Caban v. Richline Grp., Inc., No. 10-CV-559, 2012 WL 2861377, at *13 (S.D.N.Y. July 10, 2012) (holding that, "although [plaintiff] has shown that [her supervisor] gave her less work to do, without more, this does not rise to the level of" an adverse employment action). Because Plaintiff provides insufficient evidence to establish the existence of an adverse employment action, she cannot establish a retaliation claim, and the Court grants Defendants' Motion for summary judgment with respect to the retaliation claim against SUNY.

### B. Claims against Ham

#### 1. *FMLA Retaliation Claim*

Plaintiff's FMLA retaliation claim against Ham is premised on the same facts as her retaliation claim against SUNY. SAC ¶¶ 123–35; Opp'n at 11. The FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." § 2615(a)(1). FMLA retaliation claims are analyzed under the McDonnell Douglas burden-shifting framework. Graziadio v. Culinary Inst. of Am., 817 F.3d 415, 429 (2d Cir. 2016) (citing McDonnell Douglas, 411 U.S.). A plaintiff establishes a prima facie case of retaliation under the FMLA if he provides evidence showing "that 1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." Id.

14

The Court dismissed the Rehabilitation Act retaliation claim against SUNY because Plaintiff has not established that any of SUNY's alleged actions were materially adverse. Because Plaintiff's retaliation claim against Ham is premised on the same facts as the dismissed retaliation claim against SUNY, the Court finds that Plaintiff cannot establish the existence of an adverse employment action under the FMLA. Accordingly, Defendants' Motion for summary judgment is granted with respect to the FMLA retaliation claim against Ham.

### 2. *HRL Discrimination and Retaliation Claims*

Plaintiff's HRL discrimination and retaliation claims against Ham are premised on the same facts as her discrimination and retaliation claims against SUNY. SAC ¶¶ 99–122; Opp'n at 12. New York HRL discrimination and retaliation claims are subject to the same burden-shifting framework and substantive requirements as their Rehabilitation Act counterparts. See Camarillo v. Carrols Corp., 518 F.3d 153, 158 (2d Cir. 2008) ("[T]he scope of the disability discrimination provisions of [HRL] are similar to those of . . . § 504 of the Rehabilitation Act."); Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) ("The Rehabilitation Act and NYHRL contain similar provisions against retaliation and are governed in this respect by the same standards as the ADA."); Murphy v. Bd. of Educ. of Rochester City Sch. Dist., 273 F. Supp. 2d 292, 321 (W.D.N.Y. 2003) ("The standards for retaliation claims under [Title VII, the ADA, the Rehabilitation Act, and HRL] are the same."). Because the Court dismissed Plaintiff's Rehabilitation Act retaliation and discrimination claims against SUNY and because Plaintiff's HRL claims against Ham are premised on the same facts, the Court grants Defendants' Motion for summary judgment with respect to these claims.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion for summary judgment (Dkt. No. 49) is **GRANTED**, and the case is **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court is directed to close this case; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:  November 28, 2017
        Albany, New York

Lawrence E. Kahn
U.S. District Judge